UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ISAI BALTAZAR BENITEZ,<br><br>Defendant. | CRIMINAL ACTION NO.<br>1:21-CR-00103-JPB |

### ORDER ADOPTING FINAL REPORT AND RECOMMENDATION

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 101]. This Court finds as follows:

### BACKGROUND

Isai Baltazar Benitez ("Defendant"), Nereo Valencia Santos and Luis Mojica Garcia are charged with conspiracy to possess with the intent to distribute at least fifty grams of methamphetamine and attempting to possess with the intent to distribute at least fifty grams of methamphetamine. [Doc. 26]. Defendant filed two motions to suppress. In one motion, Defendant moved to suppress certain cell phone evidence that was obtained by the police. [Doc. 63]. In the other motion, Defendant moved to suppress statements that he made to the police. [Doc. 64].

The Magistrate Judge held an evidentiary hearing and, after full consideration, recommended denying both motions.  [Doc. 101].

The charges in this case stem from a drug investigation conducted by the Drug Enforcement Agency ("DEA").  The investigation began after a postal inspector intercepted a parcel that contained approximately three kilograms of methamphetamine.  [Doc. 79, p. 8].  After the package was intercepted, the DEA arranged for a controlled delivery of that package.  Id.

After law enforcement delivered the package, law enforcement officers observed Mr. Garcia, one of Defendant's co-defendants, take possession of the package and begin driving.  Id.  Law enforcement officers then pulled Mr. Garcia over, and Mr. Garcia informed them that he was taking the package to Mr. Santos, Defendant's other co-defendant.  Id.  Law enforcement subsequently met with Mr. Santos, and he explained that his plan was to take most of the methamphetamine from the package to an individual waiting in a nearby parking lot who was "driving a red Dodge Durango."  Id. at 9.

In short order, law enforcement was able to locate the red Dodge Durango in a nearby medium-sized parking lot.  Defendant was identified as the driver.  Id.  Initially, there were approximately four or five law enforcement officers on scene

and three police cars.  Id. at 23.  Law enforcement's encounter with Defendant was captured on video.  [Doc. 76].

The video showed that one law enforcement officer asked Defendant to exit his vehicle and place his hands on the hood of the patrol car.  That officer quickly patted Defendant down for drugs and/or weapons and then stepped away.  Defendant, however, stayed near the hood of the patrol car.  Indeed, when he attempted to step away, Defendant was told by another law enforcement officer to stay where he was.  Notably, Defendant was not restrained in any way or handcuffed.  The video evidence showed that the law enforcement officers were calm and not aggressive.  Moreover, none of the law enforcement officers ever unholstered their weapons or raised their voices, and Defendant even appeared to be smiling in some of his conversations with officers.

During this time, law enforcement officers spoke with Defendant and asked him various questions.  While Defendant asserted that he did not speak English, Defendant was able to engage in limited conversation that he appeared to understand.  For instance, Defendant was able to deny that he had marijuana, cocaine or guns in his vehicle.  In response to questioning, Defendant also explained that he did not have a license, passport or other form of identification.  When asked, Defendant was able to direct law enforcement officers to his keys that

were inside the vehicle. He also told officers that he had a wife named Karen and three children.

At some point during the conversation, a law enforcement officer asked Defendant for permission to search the vehicle. Defendant, who did not appear confused by the question, verbally gave his consent. In addition to verbally consenting to the search, Defendant also signed a written consent form that was in Spanish and English.

The search of Defendant's vehicle revealed two cell phones, one of which was a flip phone. A law enforcement officer instructed Mr. Santos, who was being held nearby, to call the number of the person to whom he was delivering the drugs. When Mr. Santos made the call, Defendant's flip phone began to ring. [Doc. 79, p. 29]. As the phone was ringing, a DEA agent opened the flip phone and asked Defendant to identify who was calling him. Id. at 30. Defendant responded that it was Primo, his cousin. Id. at 36.

## LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and

any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'"  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

## ANALYSIS

Defendant asserted four distinct objections to the R&R.  The Court will note that the objections are not detailed and seem to merely reassert what was argued in the original briefing.  Nevertheless, each objection is discussed below.

### 1.

In his first objection, Defendant argues that the Magistrate Judge erred by concluding that he was not in custody when he made statements to law enforcement officers.  Specifically, Defendant contends that "no 'reasonable' person in [Defendant's] position would have felt they were at liberty to terminate the interrogation and leave" because Defendant was not immediately assured that

he was not under arrest before questioning, Defendant was surrounded by multiple officers and law enforcement vehicles and Defendant was directed to stand against a law enforcement vehicle. [Doc. 105, p. 2].

The issue presented in this case is whether Defendant was in custody when he gave statements to the police. "A defendant is in custody for the purposes of Miranda when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). Stated differently, the Eleventh Circuit Court of Appeals has explained that "[a] person is 'in custody' . . . if he finds himself in 'circumstances that are thought generally to present a serious danger of coercion.'" United States v. Woodson, 30 F.4th 1295, 1303 (11th Cir. 20022) (quoting Howes v. Fields, 565 U.S. 499, 508-09 (2012)). That coercive environment exists "when a reasonable person would have understood that his freedom of action was 'curtailed to a degree associated with formal arrest.'" Id. (quoting United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010)).

Courts follow a two-part test in evaluating whether a serious danger of coercion exists. First, a court must ask whether "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." Howes,

6

565 U.S. at 509.  In answering this question, a court should analyze "'all of the circumstances surrounding the interrogation,' including the location and duration of the questioning, statements made during the interview, the presence or absence of physical restraints, and whether the person was released after the interview." Woodson, 30 F.4th at 1303.  Importantly, even if a court finds that a reasonable person would have felt that he was not at liberty to leave, a court must still consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda."  Id.

    The Court will first analyze whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave.  In this case, the interview took place in a public place and was relatively short in duration (i.e., less than fifteen minutes).  Also, Defendant was not restrained in any way.  The Court, however, cannot ignore that Defendant was not free to leave after the interview concluded.  Moreover, at one point in the interview, Defendant turned to walk away from the vehicle, and one of the law enforcement officers stepped up and told Defendant to stay where he was.  Because Defendant was specifically told that he could not leave, the Court finds that a reasonable person in Defendant's situation would have felt that he was not at liberty to terminate the interrogation and leave.

As previously stated, this finding is not dispositive because the Court must also consider whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in Miranda. In this case, Defendant stood unrestrained in a public parking lot as he spoke with law enforcement officers. Moreover, Defendant appeared relaxed on the video recording, even smiling at some points. Like Defendant, the officers also appeared relaxed, and the officers' weapons were holstered at all times. The officers were never aggressive in any way. After fully considering the totality of the circumstances, the Court agrees with the Magistrate Judge that the interview environment did not present the serious danger of coercion that custody entails. Ultimately, the Court finds that Defendant was not in custody when he gave his statements to law enforcement officers. To the extent that Defendant argues that the Magistrate Judge erred by ruling that he was not in custody when he made the statements, the objection is **OVERRULED**.

### 2.

Defendant argues in his second objection that the Magistrate Judge erred by concluding that Defendant's consent to search his vehicle was not knowing and voluntary. In Defendant's view, his consent was not knowing and voluntary because he has a limited understanding of the English language.

As a general rule, voluntariness is considered on a case-by-case basis and is based on the totality of the circumstances. United States v. Rodriguez Perez, 798 F. App'x 536, 539 (11th Cir. 2020). For consent to be voluntary, the consent must "be the product of an essentially free and unrestrained choice." Id. at 540. A court should consider the following factors in determining voluntariness:

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

Id. (quoting United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984)).

Defendant argues that he did not knowingly consent to the search of his vehicle because of his limited understanding of the English language. As an initial matter, this Court acknowledges that Defendant's English is limited. The Court does not believe, however, that Defendant's English is so limited that he was unable to consent to the search of his vehicle. In this case, Defendant was able to answer many of the questions posed to him by law enforcement officers. For instance, he denied that he had any drugs or guns in his car and admitted that he did not have any identification with him. Moreover, Defendant was able to tell one of the officers about his wife and kids and explain to another officer where his keys were located. Importantly, Defendant said yes when an officer asked to search his

9

vehicle. In addition to the verbal consent, Defendant signed a written consent form that was in Spanish and English.

After reviewing the R&R, this Court finds that the Magistrate Judge correctly considered the totality of the circumstances and the relevant factors in making her determination that the consent was voluntary. Although Defendant was told to stay near the police vehicle where he was frisked and spoke limited English, none of the other factors that suggest police coercion are present here. Indeed, at the time consent was obtained, the police officers did not have their weapons drawn nor were they making threats. Under these facts, the Court finds that Defendant's consent was voluntary. As such, to the extent that Defendant argues that his consent was not voluntary, the objection is **OVERRULED**.

### 3.

In his third objection, Defendant asserts that the Magistrate Judge erred by concluding that the warrantless search of the cell phone was not unlawful. Specifically, Defendant argues that the rationale used to suppress the search of cell phones in Riley v. California, 573 U.S. 373 (2014), should be extended to this case.

In Riley, the Supreme Court of the United States analyzed how the search incident to arrest doctrine applies to searches of modern cell phones. Id. at 385.

The Court determined that as a general rule, officers must usually secure a warrant before conducting a search of a cell phone. Id. at 386. The Court reasoned that allowing searches of cell phones in the search incident to arrest context, would "untether the rule from the justifications underlying" the exception—namely, preventing harm to officers and preventing the destructive of evidence. Id. at 386-87. By way of example, the Court explained that a search of a cell phone cannot be justified by "preventing harm to officers" because "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape." Id. at 387. Significantly, the Court recognized that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." Id. at 401-02.

Riley does not apply here because the search of Defendant's flip phone was done pursuant to his consent, not incident to his arrest. In his objection, Defendant has not explained why Riley should be extended beyond the search incident to arrest context to the circumstances present in this case. Defendant also has not provided any case law showing that Riley's rationale applies here.[1]

---

[1] Defendant's objection is only two sentences. The first sentence states, in essence, that "the rationale used in Riley . . . should be applied across exceptions to the warrant requirement." [Doc. 105, p. 4]. The second sentence states that "treating a cell phone as

11

In this case, Defendant verbally consented to the search of his vehicle. While officers were searching the vehicle, Defendant's co-defendant was instructed to call the number of the person to whom he was intending to sell the drugs. In that moment, Defendant's flip phone, which was located within the car, started ringing. An officer picked up the phone, flipped it open and asked Defendant to identify the caller.

Consent is an exception to the warrant requirement. As a general rule, "[a] consensual search is manifestly reasonable so long as it remains within the scope of the consent, and whether any limitations were placed on the scope of consent is determined by the totality of the circumstances." United States v. DeJesus, 435 F. App'x 895, 902 (11th Cir. 2011) (citations omitted). Particularly relevant here, "[w]here no limits are placed on the scope of consent, a search is constrained only 'by the bounds of reasonableness.'" Id. (quoting United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991)).

The search performed in this case was reasonable. Here, Defendant consented, without limitation, to the search of his vehicle. This is not a case where law enforcement rummaged through a suspect's cell data by, for instance,

---

a container whose contents may be searched incident to an arrest is a bit strained as an initial matter." Id.

searching an entire contact list, text messages, videos, photos, search history and any other data a phone may contain. Instead, a law enforcement officer opened Defendant's phone as it was ringing, saw a number and asked Defendant to identify the number. The only information gleaned from the cell phone before the subsequent warrant was obtained was the caller ID identifying "Primo" as the caller. In this particular circumstance, the search was reasonable. Thus, to the extent that Defendant argues that the warrantless search of the cell phone was improper, the objection is **OVERRULED**.

### 4.

Defendant's final objection is an improper and unsupported "general objection." Defendant asserts, in a single sentence, that the Magistrate Judge erred because the search warrant authorized a full search with no limits as to what law enforcement could search for. Defendant also asserts, again in a single sentence, that the search warrant affidavit did not show the existence of probable cause.

In the R&R, the Magistrate Judged devoted seven pages to thoroughly analyzing both the scope of the search warrant and whether probable cause existed. Defendant has not specifically directed the Court to where in the Magistrate Judge's analysis the alleged error, if any, exists. The Eleventh Circuit has made clear that a party must "pinpoint those portions of the magistrate's report that the

district court must specially consider." Schultz, 565 F.3d at 1361. Defendant has not done so here. In sum, Defendant's one-sentence statement that the search warrant was too broad and the one-sentence statement that the warrant was not supported by probable cause, without any further reference to the R&R, is insufficient to trigger *de novo* review. Nevertheless, in an abundance of caution, the Court did review the R&R *de novo* and discerns no error. To the extent that Defendant objects to the finding of probable cause and the scope of the warrant, the objection is **OVERRULED**.

## CONCLUSION

The Court has carefully reviewed the R&R and all objections thereto. The Court finds that the Magistrate Judge's factual and legal conclusions are correct, and therefore Defendant's objections are **OVERRULED** in their entirety. Accordingly, the Court **APPROVES AND ADOPTS** the R&R [Doc. 101] as the judgment of the Court. For the reasons stated in the Magistrate Judge's R&R, Defendant's motions [Doc. 63]; [Doc. 64] are **DENIED**.

This matter is currently scheduled for a change of plea on April 6, 2023, at 10:00 AM. The time until the plea shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i) and

(h)(7)(B)(iv) to give the parties sufficient time to prepare in light of this Court's ruling on Defendant's objections.

**SO ORDERED** this 21st day of March, 2023.

_____
J. P. BOULEE
United States District Judge

15